IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TODD ELLISON,**

   **Plaintiff,**

v.               Case No. 17-4025-DDC-JPO

**CHRISTINE M.T. LADNER,**

   **Defendant.**

# MEMORANDUM AND ORDER

   This matter comes before the court on defendant Christine M.T. Ladner's Motion to Dismiss (Doc. 6). For reasons explained below, the court grants defendant's motion. After identifying the governing facts, this order explains why.[1]

## I. Insufficient Service of Process[2]

   Defendant argues that plaintiff never served her properly. She contends that plaintiff must serve her by mailing the summons to the Office of the Attorney General in Topeka. Although she styles her entire motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim, the service of process aspect of her motion is really a Rule 12(b)(5) motion.

   When a plaintiff sues a governmental employee in her official capacity, he can effect service of process by delivering the summons and Complaint to the chief executive officer of the

---

[1] Defendant styles her motion as a Rule 12(b)(1), (2), (5), and (6). But her memorandum only addresses her Rule 12(b)(5) and (6) arguments. So, the court only focuses on these aspects of her motion.

[2] Defendant's moving papers addressed the service issue last but the court must address it first. If plaintiff has failed to provide sufficient service of process, then the court lacks personal jurisdiction over defendant. Fed. R. Civ. P. 4(k)(1). And if the court lacks jurisdiction, it cannot proceed with the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868))).

employee's agency, or in some other manner allowed by state law. Fed. R. Civ. P. 4(j)(2); *see also Bernard v. Kan. Health Policy Auth.*, No. 09-1247-JTM, 2011 WL 768145, at *14 (Feb. 28, 2011) ("Fed. R. Civ. P. 4(j)(2) governs service upon a state officer served [in a suit asserted against him] in his official capacity."). When a plaintiff sues a governmental employee in her individual capacity, he can effect service by personally serving the employee. *Fulcher v. City of Wichita*, 445 F. Supp. 2d 1271, 1275 (D. Kan. 2006); *see also* Fed. R. Civ. P. 4(e)(2)(A) ("[A]n individual . . . may be served in a judicial district of the United States by . . . delivering a copy of the summons and of the complaint to the individual personally . . . .").

Here, plaintiff has asserted that he is suing defendant only in her individual capacity. Doc. 13 at 14. Plaintiff thus properly served defendant because the record shows that plaintiff personally served her, *see* Doc. 4 ("Proof of Service" form) at 1 (reciting that defendant was served personally on March 31, 2017), and defendant has presented no evidence to the contrary. Plaintiff thus properly served defendant with process.

**II.     Governing Facts**

The remainder of defendant's motion to dismiss contends that the Complaint fails to state a claim upon which the court can grant relief. Because this portion of the motion relies on Federal Rule of Civil Procedure 12(b)(6), the court must accept the well-pleaded facts in the Complaint as true. *Brokers' Choice of Am. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). It also must construe those facts in the light most favorable to plaintiff. *Id.* The following paragraphs summarize that version of the facts for purposes of the current motion.

Defendant Christine M.T. Ladner is an Assistant Attorney General for Kansas who handles civil commitment actions under the Kansas Sexually Violent Predator Act ("KSVPA"). The KSVPA allows Kansas to commit an individual in a civil proceeding if the state proves that

he is a sexually violent predator. *See* Kan. Stat. Ann. § 59-29a07(a). Todd Ellison, plaintiff, brings this lawsuit in response to his extended stay in custody at Sedgwick County Adult Detention Facility while awaiting trial to determine whether he was a sexually violent predator under the KSVPA.

Before he was taken into custody under the KSVPA, plaintiff served a prison sentence for committing a sex crime. On June 1, 2009, shortly before he was released from prison, Kansas filed a Petition against plaintiff under the KSVPA. The Complaint does not specify whether defendant signed this Petition on Kansas's behalf. Kansas's KSVPA Petition alleged that the Kansas Department of Corrections had certified that plaintiff might meet the criteria for civil commitment established by the KSVPA. As the KSVPA requires, the District Court of Sedgwick County, Kansas held a probable cause hearing on June 25, 2009, and found probable cause to hold plaintiff in custody for the duration of the proceedings. The Sedgwick County Adult Detention Facility then took plaintiff into custody. The Sedgwick County District Court initially set plaintiff's trial date on the KSVPA Petition for September 21, 2009, but this trial date was continued multiple times. The plaintiff in this case—the defendant in the KSVPA case in Sedgwick County—requested some of the continuances. Other continuances occurred when the case was reassigned to new judges. The Complaint never alleges that the defendant in this case requested any of the continuances.

Some three years later, on June 21, 2012, plaintiff filed three motions in the Sedgwick County KSVPA proceeding. All three sought to secure plaintiff's release. The motions argued that: (1) the KSVPA was facially unconstitutional; (2) the Kansas Attorney General had changed the KSVPA in a fashion that made it a criminal statute; and (3) the KSVPA violated the Due Process Clause. On February 10, 2014, the Sedgwick County District Court granted the last of

the three motions.  The Kansas Supreme Court then affirmed the Sedgwick County court's decision on December 9, 2016, and the Sedgwick County Adult Detention Facility released plaintiff shortly thereafter.

Plaintiff then filed this lawsuit in federal court.  He asserts a single claim against defendant under 42 U.S.C. § 1983.  Claiming defendant has violated his constitutional rights, plaintiff has sued defendant in her individual capacity only.

### III.    Legal Standard

On a motion to dismiss for failure to state a claim, the court accepts all facts pleaded by the non-moving party as true and draws any reasonable inferences in favor of the non-moving party.  *Brokers' Choice of Am.*, 757 F.3d at 1136.  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'"  *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  This is so because the court need not "'accept

as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Although the court typically can only look to the facts pleaded in the Complaint to decide a motion to dismiss, the court can "'take judicial notice of its own files and records . . . .'" *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)). But these documents "'may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

## IV.  Discussion

The Complaint's only claim asserts that plaintiff is entitled to recover from defendant under 42 U.S.C. § 1983. A defendant incurs liability under § 1983 when, acting under color of state law, she deprives the plaintiff of constitutional rights. In his motion to dismiss, defendant argues that the Complaint provides no reason for the court "to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Schneider*, 493 F.3d at 1177. Expressed more specifically, defendant's motion makes two distinct arguments. First, she argues that she is immune from suit. And second, defendant asserts that the statute of limitations bars plaintiff's suit under § 1983. The court concludes that defendant is immune from suit and thus dismisses the case based on defendant's immunity arguments. The court thus declines to reach the statute of limitations issue.

Government officials are immune from suit under § 1983 in certain situations. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). For instance, prosecutors enjoy absolute immunity from suit based on actions they allegedly took in their role as prosecutors. *Imbler v. Pachtman*, 424

U.S. 409, 427 (1976). But when a prosecutor is sued based on actions allegedly taken as part of the prosecutor's administrative or investigative functions, the scope of immunity shrinks to qualified immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (explaining that a prosecutor's actions are either protected by absolute or qualified immunity, depending on the nature of the actions allegedly violating plaintiff's constitutional rights).

Defendant contends that both absolute and qualified immunity protect her from this suit. Her immunity defense makes three principal arguments. First, she argues that the Eleventh Amendment bars any official capacity suit against her. Second, defendant contends that absolute immunity protects her from any suit brought against her in her individual capacity because she took the actions that allegedly deprived plaintiff of his constitutional rights in her role as a prosecutor. And last, defendant asserts, even if absolute immunity does not protect her from suit, qualified immunity does.

In his response to defendant's service of process argument, plaintiff clarified the intentions of his Complaint. Plaintiff has asserted—explicitly—that he has sued defendant only in her individual capacity. *See* Doc. 13 at 14 (asserting that plaintiff properly served defendant when he served her personally because "[defendant] is being sued in her individual capacity"). While one might construe the Complaint to allege an official capacity suit, the court holds plaintiff to his characterization of his one claim as one asserted against defendant in her individual capacity. *See First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) ("Courts may invoke judicial estoppel to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."). The

6

court thus does not address defendant's argument that the Eleventh Amendment bars any official capacity suit.³

### A.     Prosecutorial Immunity

A prosecutor has absolute immunity from suit under § 1983 for claims based on actions taken while performing activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430.  In addition, "'[s]tate attorneys . . . who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings' are 'absolutely immune from suit under section 1983 . . . .'"  *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991) (further citation omitted)) (holding that absolute immunity protected a government lawyer who filed a petition for a civil commitment proceeding).  As the Supreme Court has explained, a decision by a state-employed attorney to initiate a civil proceeding "is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. [A state's attorney], like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought."  *Butz v. Economou*, 438 U.S. 478, 515 (1978).

When deciding whether absolute immunity protects a state-employed attorney from suit, courts ask whether the alleged conduct that deprived plaintiff of his constitutional rights involves "legal knowledge and exercise of related discretion."  *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).  Here, all the violative conduct alleged by the Complaint was related closely to the

---

³       Even if the Complaint had alleged an official capacity suit against defendant, the Eleventh Amendment would present a significant obstacle.  The Complaint only seeks money damages for a past harm.  *See* Doc. 1 (Complaint) at 7.  Such a Complaint runs headlong into the Eleventh Amendment.  *Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (holding that the Eleventh Amendment barred a suit against state officials sued in their official capacity when plaintiff's damages were "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials").

judicial process. The Complaint alleges that defendant violated plaintiff's constitutional rights by: (1) failing to prosecute the action "further;" and (2) failing to file a motion for release while the KSVPA proceeding continued.[4] Doc. 1 (Complaint) ¶ 27. These activities are ones that involve legal knowledge and the exercise of related discretion. *Van de Kamp*, 555 U.S. at 344.

Any decision by defendant to delay prosecuting the action would have required defendant either to file a motion for continuance or not oppose the Sedgwick County court's decision to continue the case.[5] *See* Kan. Stat. Ann. § 59-29a06(a) ("The [KSVPA determination] trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice and when the [defendant] will not be substantially prejudiced."). This kind of decision requires legal knowledge and the exercise of related discretion. *See Bansal v. Russ*, 513 F. Supp. 2d 264, 274 (E.D. Pa. 2007) (holding that absolute immunity protected federal prosecutors when the Complaint alleged that they maliciously filed motions for continuance). Even assuming that defendant had signed and filed motions to continue the trial of the KSVPA case, such a decision required her to evaluate whether the KSVPA permitted a delay in the proceeding and whether, in her discretion, she

---

[4] The Complaint incorrectly asserts that defendant detained plaintiff. *See* Doc. 1 (Complaint) ¶ 27 ("[Defendant] violated [plaintiff's] right to be afforded a determination of the civil proceedings initiated against him under the KSVPA without unreasonable delay by . . . detaining him in the Sedgwick County Adult Detention Facility for [56 months] without reasonable explanation of the delay and based solely on an unverified petition."). This is not a factual allegation the court must accept as true. Instead, it concludes that it is a legal conclusion and one that Kansas law will not abide. Under the KSVPA, the judge—not the state-employed attorney—decides whether to order an allegedly sexually violent predator to a "secure facility." Kan. Stat. Ann. § 59-29a05(d). And as Judge Marten has explained, "[An allegedly sexually violent predator's] liberty [can] only be secured by an order of the trial court, and seeking such an order would be a classic illustration of prosecutorial judgment and discretion." *Ontiberos v. Ladner*, No. 15-1179-JTM, 2015 WL 6811787, at *2 (D. Kan. Nov. 5, 2015). The court thus construes the Complaint here to allege that defendant violated plaintiff's constitutional rights when she did not seek such an order during the KSVPA proceedings.

[5] The court is mindful that the Complaint never alleges that defendant filed any motions for continuance. But because the Complaint vaguely asserts that "multiple continuances" caused "immense delay," Doc. 1 (Complaint) ¶ 14, the court gives plaintiff the benefit of the doubt that defendant requested some of these continuances.

needed the delay.  Evaluating continuance motions filed by the plaintiff—or otherwise interposed by the court—required a similar evaluation.

Likewise, any decision by defendant to file—or not to file—a motion for release or dismiss—or not to dismiss—the KSVPA Petition against plaintiff required defendant to evaluate whether the plaintiff's continued detention violated plaintiff's due process rights—a decision that also involves legal knowledge and the exercise of related discretion.  *See Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (holding absolute immunity protected a prosecutor who had refused to dismiss criminal charges for a crime plaintiff allegedly did not commit).  Absolute immunity thus protects defendant from the claim that the Complaint asserts against her.

Three years ago, our court decided an almost identical case, which informs the court's analysis here.  In the earlier case, Kansas had commenced a KSVPA proceeding against an allegedly sexually violent predator.  *Ontiberos v. Ladner*, No. 15-1179-JTM, 2015 WL 6811787, at *1 (D. Kan. Nov. 5, 2015).  The alleged predator—later the *Ontiberos* plaintiff—stipulated that probable cause existed to believe he was a sexually violent predator and so, the presiding judge ordered him held in custody at the Sedgwick County Adult Detention Facility.  *Id.*  Later, at a trial to decide plaintiff's status under the KSVPA, a jury concluded that he was a sexually violent predator.  *Id.*  On appeal, the Kansas Supreme Court reversed the jury's conclusion, holding that plaintiff's lawyer had provided ineffective assistance of counsel during the trial.  *Id.* The supreme court remanded the case for a new trial, but did not order the trial court to release plaintiff pending that trial.  *Id.*  The case spanned two more years before Ms. Ladner—the defendant in both *Ontiberos* and here—filed a motion to dismiss the Petition.  *Id.*

Mr. Ontiberos then sued Ms. Ladner under § 1983, arguing that she had violated his Fourth Amendment right against illegal seizure and his Sixth Amendment right to a speedy trial

by refusing to release him or dismiss the case after the Kansas Supreme Court had remanded it. *Id.* Ms. Ladner moved to dismiss the federal case, contending, in part, that prosecutorial immunity protected her from suit. *Id.* Judge Marten agreed. *Id.* at *2. He explained that the Kansas Supreme Court never cleared the plaintiff of the KSVPA accusations. Instead, it merely determined that he had received ineffective assistance of counsel and thus deserved a new trial. *Id.* So, only the trial court could secure his release while he awaited his new trial under the KSVPA since the court and plaintiff had agreed that probable cause existed to hold plaintiff in custody. *Id.* Because "[plaintiff's] liberty could only be secured by an order of the trial court, . . . seeking such an order would be a classic illustration of prosecutorial judgment and discretion." *Id.*

Plaintiff argues that *Ontiberos* materially differs from this case and thus requires a different result. His argument relies on three distinctions. First, he notes that the *Ontiberos* plaintiff stipulated that probable cause existed to believe he was a sexually violent predator. Here, plaintiff made no such stipulation. Second, plaintiff notes that a jury decided that the *Ontiberos* plaintiff was a sexually violent predator under the KSVPA. Here, the plaintiff alleges, he never received a trial on the merits of the KSVPA accusations against him. And last, plaintiff claims, *Ontiberos* differs because the defendant there actually acted to dismiss the KSVPA case. Here, plaintiff notes, a Kansas state trial judge eventually dismissed the KSVPA charge against him.

The court agrees with the premise of plaintiff's argument: there are some differences between *Ontiberos* and this case. But plaintiff largely fails to explain why these differences matter. So, the more telling question is whether any of those differences matter to the legal

analysis that governs the immunity question. After consideration, the court concludes that they do not.

As explained above, when deciding whether absolute immunity applies, the court must consider the "nature of the function performed" by the state-employed attorney that purportedly deprived plaintiff of a constitutional right. *See Buckley*, 509 U.S. at 269 ("In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a 'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" (internal citation omitted) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988))). Both in *Ontiberos* and here, the plaintiffs asserted the defendant had deprived them of a constitutional right by *failing* to prosecute the KSVPA case more rapidly, or by *failing* to seek their release while the KSVPA accusation was pending. *Compare* Doc. 1 (Complaint) at ¶ 32 in *Ontiberos v. Ladner*, No. 15-1179-JTM-TJJ, 2015 WL 6811787 (D. Kan. Nov. 5, 2015) *with* Doc. 1 (Complaint in this case) at ¶ 27. None of the distinctions relied on by plaintiff's argument go to that theory.

For example, the probable cause determination under the KSVPA is controlled by someone other than the target of the § 1983 claim. In *Ontiberos*, the KSVPA defendant—not Ms. Ladner—decided to stipulate to probable cause. Here, a judge of the District Court of Sedgwick County, Kansas decided that there was probable cause to believe plaintiff was a sexually violent predator. *See* Doc. 1 at ¶ 11. And once probable cause is found and the allegedly violent predator is detained, his "liberty [can] only be secured by an order of the trial court, and seeking such an order would be a classic illustration of prosecutorial judgment and discretion." *Ontiberos*, 2015 WL 6811787, at *2.

The second distinction also doesn't affect the court's analysis. This argument contends that a jury decided the *Ontiberos* plaintiff was a sexually violent predator, but no similar finding was returned here. But the distinction between defendant's action before a jury returns a verdict and after a jury returns a verdict is not meaningful to the absolute immunity analysis. A state-employed attorney still acts as an advocate when she files or declines to file a motion for release before a jury reaches a verdict. *See Hinton*, 362 F. App'x at 907 (holding that absolute immunity protected a prosecutor who refused to dismiss a case before the jury returned a verdict). And when the Kansas Supreme Court nullified the jury's verdict in *Ontiberos*, the defendant became an alleged violent predator—just like plaintiff was here. *Ontiberos*, 2015 WL 6811787, at *2.

Finally, plaintiff argues, the defendant dismissed the KSVPA accusation in the *Ontiberos* case. But here, he notes, a Kansas state trial judge eventually dismissed the KSVPA charge against him. Plaintiff incorrectly reads *Ontiberos* to hold that absolute immunity protects the lawyer defendant but only where she sought plaintiff's release and not when she refuses to seek release. Doc. 13 at 7. The issue before Judge Marten was not whether defendant's decision to release Mr. Ontiberos violated his constitutional rights; it was whether her actions before she sought his release violated his constitutional rights. *Ontiberos*, 2015 WL 6811787, at *2 ("However, even assuming she was involved in the case earlier than the motion to release, the *decision whether* to seek the release pending a retrial of a person previously determined to be a sexually violent predator is the action of an officer of the court which is entitled to prosecutorial immunity." (emphasis added)); *see also* Doc. 1 (Complaint) at ¶ 32 in *Ontiberos*, 2015 WL 6811787 ("[Defendant] violated [plaintiff's] right to be afforded a determination of the civil proceedings initiated against him under the KSVPA without unreasonable delay by taking no action to further advance the case against [plaintiff] for approximately twenty-one months and

detaining him in the Sedgwick County Adult Detention Facility for that time without reasonable explanation of the delay and based solely on an unverified petition."). So, despite plaintiff's contentions, Judge Marten did not confine his holding to situations where a state-employed attorney actually sought a release order. It also applies to situations when a state-employed attorney decides whether to seek such an order.

Instead of following Judge Marten's decision in *Ontiberos*, plaintiff argues that *King v. Timmoney*, 263 F. Supp. 2d 977 (E.D. Pa. 2003) controls this case. But *King* involved a materially different set of facts. In *King*, law enforcement officers arrested plaintiff for an outstanding warrant. *Id.* at 978. They transported him to the county jail, where plaintiff remained for 75 days without a hearing or explanation. *Id.* Plaintiff sued various defendants—including the county district attorney's office who oversaw his case—under § 1983. *Id.* at 979. Plaintiff alleged that the district attorney's office had violated plaintiff's constitutional rights by failing to secure a prompt preliminary hearing date. *Id.* at 981. The office moved to dismiss the § 1983 claim under Rule 12(b)(6), arguing that absolute immunity protected it from the suit. *Id.* The court disagreed. It reasoned that scheduling a hearing is not within a district attorney's role as an advocate for the state; rather, it is an administrative function. *Id.* It also ruled that allowing suits under § 1983 over a prosecutor's scheduling of a hearing would not interfere with the attorney's exercise of independent judgment during prosecution. *Id.* at 982; *see also Imbler*, 424 U.S. at 424–25 (fearing that "[i]f a prosecutor had only a qualified immunity [for his prosecutorial duties], the threat of § 1983 suits would undermine performance of his duties").[6]

---

[6] Plaintiff argues that this policy consideration does not apply here because a difference exists between a prosecutor—who aims to punish a criminal defendant—and a state-employed attorney handling a civil KSVPA case. Suits under acts like the KSVPA, plaintiff claims, aim to rehabilitate the afflicted. Doc. 13 at 9. But the rationale for granting prosecutors absolute immunity stems not from their role in the criminal justice system; instead, it flows from their quasi-judicial status. *See Pfeiffer*, 929 F.2d at 1489–90 ("The rationale for granting absolute immunity [to state-employed attorneys and prosecutors who initiate and pursue proceedings] is to allow prosecutors and those

Here, the Complaint never asserts that defendant failed to schedule a hearing. Instead, it alleges that defendant violated plaintiff's constitutional rights "by taking no action to further advance the case against [plaintiff] for approximately fifty-six months and detaining him . . . without reasonable explanation of the delay and based solely on an unverified petition." Doc. 1 (Complaint) ¶ 27. This differentiates defendant's conduct from the conduct alleged in *King*. When taking the actions that allegedly amounted to a deprivation of his constitutional rights, defendant represented Kansas as its advocate because she decided whether it was in Kansas's best interest to allow the Sedgwick County District Court to continue detaining plaintiff. *See Bansal*, 513 F. Supp. 2d at 274 (holding that absolute immunity protected federal prosecutors when the Complaint alleged that they maliciously filed motions for continuance). And imposing suits like plaintiff's on defendant could affect defendant's judgment when pursuing KSVPA proceedings because it could inhibit the prosecution-like decision-making about whether to continue pursuing a KSVPA commitment proceeding. *See Imbler*, 424 U.S. at 424–25. This makes the state-employed attorney who made those decisions—the defendant here—absolutely immune from suit under § 1983.

## B.     Qualified Immunity

Even if absolute immunity did not protect defendant from plaintiff's suit, qualified immunity does. Qualified immunity protects officials from suit when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *City & Cty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). "The plaintiff bears the burden of establishing both (1) that the defendant violated a constitutional right and (2) that the right had been clearly established by the time of the violation." *Tenorio v.*

---

performing equivalent functions 'the latitude to perform their *quasi-judicial* tasks absent the threat of retaliatory section 1983 litigation.'" (emphasis added) (quoting *Snell v. Tunnell*, 920 F.2d 673, 686–87 (10th Cir. 1990))).

*Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015).  The court, in its discretion, can forgo analyzing whether defendant violated a constitutional right if the court determines that defendant has not violated a clearly established constitutional right.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Because the court concludes that defendant—even assuming she did what the Complaint alleges—did not violate a clearly established right, the court need not decide whether defendant violated a constitutional right.

For a statutory or constitutional right to achieve "clearly established" status, the existing precedent must recognize the right as one that is beyond debate for a reasonable governmental official.  *Id.*  Also, the legal authority recognizing the right clearly cannot define it at a general level.  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).  Instead, the existing precedent must be "particularized to the facts of the case."  *Id.* (internal quotation marks omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))).  "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).  Thus, the existing precedent either must involve materially similar facts or establish when the official's conduct obviously violates the law.  *White*, 137 S. Ct. at 552.

Qualifying precedent usually comes from Supreme Court or Tenth Circuit decisions, but it also can come from clearly established case law in other circuits.  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003).  The controlling precedent must clearly establish the right plaintiff alleges defendant violated and the controlling precedent must have done so when the official took the challenged action.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866

(2017). In short, only "'the plainly incompetent or those who knowingly violate the law'" do not qualify for qualified immunity. *Id.* at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

*Mullenix* illustrates how this analysis works. In that case, the Supreme Court rejected the Fifth Circuit's characterization of the constitutional right asserted by plaintiff. *Mullenix*, 136 S. Ct. at 309. The Fifth Circuit had characterized the right asserted by plaintiff as the right to be free from "'deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.'" *Id.* at 308–09 (quoting Fifth Circuit opinion). Instead, the Supreme Court held, the correct formulation of the right was a right to be free from deadly force when the officer "confronted a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer . . . ." *Id.* at 309. The Court held that no precedent clearly established such a right. *Id.* at 309–10.

Here, plaintiff claims that qualified immunity cannot protect defendant because plaintiff had a clearly established right to be free from unreasonable seizures. Doc. 13 at 10. This characterization operates at a far too general level. *Mullenix*, 136 S. Ct. at 309–10. The correct way to describe the constitutional right that the Complaint asserts is this: the right to be free from a lengthy detention before a civil commitment proceeding when multiple continuances were filed and defendant failed to prosecute the case further. Plaintiff cites no case recognizing that right in 2016 when the purported violation allegedly occurred. And the court's own research did not identify such a case.

Indeed, when the Kansas Supreme Court considered whether the State of Kansas had violated plaintiff's constitutional rights, it found no controlling precedent. In an earlier state

16

court case, Mr. Ellison—the plaintiff here—asserted that his prolonged detention was violating his constitutional right.  *See In re Ellison*, 385 P.3d 15, 18 (Kan. 2016).  While the Kansas Court of Appeals rejected that premise, the Kansas Supreme Court agreed with plaintiff.  *Id.* at 21.  It ordered the trial court to release him.  *Id.* at 30.  Despite this result, the Kansas Supreme Court wrestled with the correct rule to apply to determine whether the state had violated plaintiff's due process rights.  *Id.*  The Kansas court eventually settled on the rule in *Barker v. Wingo*, 407 U.S. 514 (1972), where the Supreme Court articulated a test to determine whether the government violated a criminal defendant's Sixth Amendment right to a speedy trial.  *In re Ellison*, 385 P.3d at 22.  Importantly, the Kansas Supreme Court cited no existing case law from the Supreme Court or the Tenth Circuit that directly answered whether Kansas had deprived plaintiff of due process by proceeding so slowly in a civil commitment proceeding, or keeping him detained while doing so.  *See id.* at 22–25.  Neither does plaintiff now.

Plaintiff contends *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), clearly establishes plaintiff's right to a probable cause hearing within 48 hours of arrest.  But *McLaughlin* does not apply.  In *McLaughlin*, the Supreme Court held that states generally cannot detain a suspect in a criminal case for more than 48 hours unless a court determines probable cause exists to hold the suspect.  *Id.* at 56.  In contrast, here, plaintiff had a probable cause hearing.  Doc. 1 (Complaint) ¶ 11.  While plaintiff alleges that 24 days passed between Kansas's filing of the KSVPA petition and the probable cause hearing, *see* Doc. 1 (Complaint) ¶¶ 10, 11, Kansas initiated a civil case, not a criminal one.  And plaintiff does not allege defendant violated his rights when the probable cause hearing was delayed; instead, the Complaint alleges that "[defendant] violated [plaintiff's] right to be afforded a *determination* of the civil proceedings

initiated against him." *Id.* ¶ 27. *McLaughlin* thus does not clearly establish a constitutional right that defendant encroached.

Plaintiff also contends the procedural safeguards in Kan. Stat. Ann. § 59-29a06 recognized the right that he asserts was taken from him because it only allows continuances in KSVPA proceedings when a party shows good cause, or when the alleged predator will not be substantially prejudiced. Kan. Stat. Ann. § 59-29a06(a). But this statute never provides specific guidance that would allow a reasonable government official to discern when particular conduct violates the law. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him."). Indeed, § 59-29a06 never defines what qualifies as good cause, or when an alleged predator is "substantially prejudiced."

In sum, even if absolute immunity did not protect defendant from the suit asserted against her, qualified immunity would immunize her from this suit.

## V.    Conclusion

For reasons explained above, the court grants defendant's Motion to Dismiss (Doc. 6).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 6) is granted.

**IT IS SO ORDERED.**

**Dated this 20th day of March, 2018, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**